UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MEKHENA T.,

                    Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

Case No. C22-1339-SKV

ORDER REVERSING THE
COMMISSIONER'S DECISION

Plaintiff seeks review of the denial of his application for Supplemental Security Income. Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff was born in 1991, has a GED, and has worked as a toy salesperson.  AR 43, 241. Plaintiff was last gainfully employed in 2017.  AR 241.

In May 2019, Plaintiff applied for benefits, with an amended alleged onset date of May 30, 2019.  AR 40, 212-21.  Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing.  AR 109-12, 114-17.  After the ALJ conducted a hearing in July 2021 (AR 36-66), the ALJ issued a decision finding Plaintiff not disabled.  AR 15-30.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one**:  Plaintiff has not engaged in substantial gainful activity since the application date.

**Step two**:  Plaintiff has the following severe impairments: major depressive disorder, generalized anxiety disorder, obsessive-compulsive disorder, and borderline personality disorder.

**Step three**:  These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity (RFC)**:  Plaintiff can perform a full range of work at all exertional levels with the following non-exertional limitations: he can understand, remember, and carry out simple instructions and exercise simple workplace judgment. He can perform work that is learned by on-the-job training, beyond a short demonstration and lasting up to and including one month.  He can respond appropriately to supervision, but he should not be required to work in close coordination with co-workers, as in where teamwork is required.  He can work in jobs that require no interaction with the general public to perform the work tasks, but this does not preclude a working environment where the public is present.  He can deal with occasional changes in the work environment.

**Step four**:  Plaintiff has no past relevant work.

**Step five**:  As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR 15-30.

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision.  AR 1-6.  Plaintiff appealed the final decision of the Commissioner to this Court.  Dkt. 4.

## LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on harmful legal error or not supported by

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P, App. 1.

1    substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir.

2    2005).  As a general principle, an ALJ's error may be deemed harmless where it is

3    "inconsequential to the ultimate nondisability determination."  *Molina v. Astrue*, 674 F.3d 1104,

4    1115 (9th Cir. 2012) (cited sources omitted).  The Court looks to "the record as a whole to

5    determine whether the error alters the outcome of the case." *Id*.

6        Substantial evidence is "more than a mere scintilla.  It means - and means only - such

7    relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

8    *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up); *Magallanes v. Bowen*, 881 F.2d

9    747, 750 (9th Cir. 1989).  The ALJ is responsible for evaluating symptom testimony, resolving

10   conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v.*

11   *Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record

12   as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the

13   Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is

14   susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

15   must be upheld.  *Id.*

16                                         **DISCUSSION**

17        Plaintiff argues the ALJ erred in discounting his testimony and in considering the report

18   completed by his father, and in finding the opinion of his therapist unpersuasive.  The

19   Commissioner argues the ALJ's decision is free of harmful legal error, supported by substantial

20   evidence, and should be affirmed.

21   **A.    The ALJ Erred in Discounting Plaintiff's Testimony**

22        The ALJ summarized Plaintiff's allegations and explained that he discounted them

23   because: (1) the medical evidence is inconsistent with Plaintiff's allegations because many of the

ORDER REVERSING THE COMMISSIONER'S
DECISION - 3

1  objective findings are normal and Plaintiff's symptoms improved with medication; and (2) his

2  activities (interacting normally with providers and at his administrative hearing, attending

3  college[3], and forming friendships and dating relationships) are inconsistent with his alleged

4  cognitive and social limitations.  AR 21-25.  Absent evidence of malingering, an ALJ must

5  provide clear and convincing reasons to discount a claimant's testimony.  *See Burrell v. Colvin*,

6  775 F.3d 1133, 1136-37 (9th Cir. 2014).

7          Plaintiff argues that the ALJ's reasons for discounting his testimony are not legally

8  sufficient.  First, Plaintiff argues that the ALJ failed to identify any medical evidence that

9  contradicts his allegations.  The ALJ acknowledged that Plaintiff received inpatient psychiatric

10 treatment before and during the adjudicated period, but emphasized that during and after that

11 treatment, Plaintiff's hallucinations decreased and he did not attempt to act on his persistent

12 violent thoughts.  AR 22-23.  The record corroborates the ALJ's factual summary to this extent,

13 but the record also indicates that while Plaintiff did not attempt to act on his intrusive thoughts,

14 those thoughts persisted to a degree that significantly interfered with his ability to function.[4]

15

16 [3] The Commissioner concedes that the ALJ's finding with regard to college is inaccurate with respect to
   the adjudicated period, because Plaintiff attended college before, not during, the adjudicated period.  *See*

17 Dkt. 22 at 16 n.7.

18 [4] *See, e.g.*, AR 747 ("Obsessive thoughts have been worse and [Plaintiff] cannot act on his compulsions
   due to the violent nature of the obsessions which leave[s] him no choice but to isolate."), 751 ("Obsessive

19 thoughts have been worse and difficult [to] control in the past 3 weeks. . . . He is isolating still due to the
   nature of his problems."), 756 (reports still isolating due to intrusive violent thoughts), 1252 (Plaintiff

20 continues to self-harm and reports "intrusive violent and sexual thoughts"), 1254 (Plaintiff reports that
   intrusive thoughts continue and he has trouble "getting past them" throughout the day), 1286 (Plaintiff

21 reports an increase in intrusive thoughts and a shift in the target of those thoughts), 1301 (Plaintiff reports
   sleeping 20-22 hours per day), 1305 (Plaintiff reports "still sleeping throughout the day to get away from
   his own thoughts"), 1362 (Plaintiff reports "spend[ing] much of his time alone in his room, having some

22 brief and intermittent interactions with his parents"), 1377 (Plaintiff reports experiencing racing and
   obsessive thoughts that led him to engage in self-harm earlier in the week, and Plaintiff experienced

23 racing thoughts during a therapy appointment), 1382 (Plaintiff reports self-harm behavior and an episode
   of dissociation earlier in the week; Plaintiff also reports that he experienced intrusive violent thoughts
   about a psychiatrist during an appointment but did not disclose them to her), 1391 (Plaintiff reports to

ORDER REVERSING THE COMMISSIONER'S
DECISION - 4

Many of the normal mental status examination findings cited by the ALJ are contained within

treatment notes that nonetheless describe significant functional limitations resulting from

intrusive, obsessive thoughts, and the ALJ's focus on normal mental status findings does not

pertain to the symptoms that Plaintiff alleges are disabling.[5]  Because the objective findings cited

by the ALJ do not directly connect to the symptoms that Plaintiff alleged, the ALJ erred in

relying only on those parts of the notes that support his conclusion and ignoring the parts of the

notes that are inconsistent with his RFC assessment.  *See Reddick v. Chater*, 157 F.3d 715,722-

23 (9th Cir. 1998) ("In essence, the ALJ developed his evidentiary basis by not fully accounting

for the context of materials or all parts of the testimony and reports. His paraphrasing of record

material is not entirely accurate regarding the content or tone of the record. We conclude that his

approach and conclusions do not fully account for the nature of CFS and its symptoms.").

Furthermore, although the ALJ emphasized that Plaintiff was able to avoid acting on his

intrusive thoughts of violence and rape (AR 24-25), Plaintiff was able to do so by isolating, self-

harming, and engaging in obsessive rituals, as detailed *supra*.  The ALJ did not explain how

---

therapist that in order to avoid triggers for his intrusive thoughts, he socially isolates), 1395 (Plaintiff experienced intrusive thoughts during a therapy session and could no longer make eye contact with therapist), 1401 (Plaintiff engaged in self-harm behavior and has been losing track of time due to intrusive thoughts), 1402 (Plaintiff reports "persistent heightened anxiety and depression"), 1406 (Plaintiff reports engaging in self-harm in order to stop the obsessive thoughts), 1407 (increased obsessive thoughts that Plaintiff describes as "homicidal and rape fantasies"), 1410 (Plaintiff engaged in self-harm that week).

[5] *See* AR 24 (citing, *e.g.*, AR 481-82 (normal attention, but increased auditory hallucinations and intrusive thoughts that led Plaintiff to isolate in his bed), 484-85 (normal attention, but auditory hallucinations and suicidal ideation), 650-52 (normal attention, but isolating and self-harming), 763-66 (normal objective findings, but self-harming and isolating to deal with intrusive thoughts), 1390-91 (normal objective findings, but Plaintiff's intrusive thoughts have led him to isolate to avoid triggers), 1392-93 (normal objective findings, but Plaintiff experienced a panic attack due to being without his family in public), 1396-97 (normal objective findings, but Plaintiff reported an episode of intrusive thoughts triggered by emotional vulnerability), 1406-07 (normal objective findings, but Plaintiff reports engaging in self-harm to calm down his intrusive violent thoughts).

ORDER REVERSING THE COMMISSIONER'S
DECISION - 5

1  these coping mechanisms could be compatible with working full-time, even with the cognitive,

2  social, and adaptation limitations accounted for by the ALJ. *See* AR 20-21 (RFC assessment).

3       The ALJ also failed to cite activities that either contradict Plaintiff's allegations or

4  demonstrate the existence of transferable work skills. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th

5  Cir. 2007) (activities may undermine credibility where they (1) contradict the claimant's

6  testimony or (2) "meet the threshold for transferable work skills").  The ALJ cited Plaintiff's

7  ability to engage with his providers one-on-one in a clinical environment as a reason to discount

8  his allegation of disabling social limitations (AR 25), but there is no inconsistency evident here

9  because workplace interactions are unlike therapeutic interactions with a patient. *See, e.g.*,

10  *Schultz v. Colvin*, 2015 WL 2062383, at *10 (W.D. Wash. May 4, 2015) (rejecting an ALJ's

11  discounting of social limitations based on plaintiff's ability to interact with medical providers,

12  emphasizing "the significant difference in time, demands, and expectations between attending a

13  medical appointment and full-time employment"); *Smith v. Colvin*, 2014 WL 2154522, at *4

14  (W.D. Wash. May 22, 2014) (finding that a claimant's interaction with medical providers "does

15  not necessarily present the same type of difficulties as do social interactions with supervisors on

16  the job").

17       Likewise, Plaintiff's ability to remain "coherent and quite articulate" during the

18  telephonic administrative hearing does not either contradict his allegations or demonstrate an

19  ability to work, given that a telephonic administrative hearing bears little resemblance to most

20  workplaces, particularly those that the ALJ found suitable for Plaintiff. *See* AR 29 (finding

21  Plaintiff capable of working as a general laborer and industrial cleaner).  His ability to form one

22  short-term friendship/relationship while he was hospitalized for inpatient psychiatric care during

23  the adjudicated period may indicate, as the ALJ found (AR 25), some degree of social

ORDER REVERSING THE COMMISSIONER'S
DECISION - 6

1   functioning, but again, this type of interaction is not sufficiently similar to workplace interaction

2   to demonstrate that he can work around co-workers and the public on a full-time basis and can

3   respond appropriately to supervision.  *See* AR 20-21 (finding that Plaintiff can "respond

4   appropriately to supervision, but he should not be required to work in close coordination with

5   coworkers, as in where teamwork is required.  He can work in jobs that require no interaction

6   with the general public to perform the work tasks, but this does not preclude a working

7   environment where the public is present.").

8          Because the record does not support the ALJ's finding of inconsistency between the

9   treatment notes and Plaintiff's allegations, and the ALJ did not identify activities that either

10  contradict Plaintiff's allegations or demonstrate the existence of transferable work skills, the

11  ALJ's reasons for discounting Plaintiff's testimony are not legally sufficient.  The ALJ shall

12  reconsider Plaintiff's allegations on remand.

13         **B.     The ALJ Should Consider Plaintiff's Father's Report on Remand**

14         Plaintiff's father completed a third-party function report (AR 279-86), which the ALJ

15  summarized and found that it was insufficient to establish disability for the same reasons that the

16  ALJ provided with regard to Plaintiff's allegations.  AR 28.  Because, as explained *supra*, the

17  ALJ erred in assessing Plaintiff's allegations and must reconsider them on remand, the ALJ

18  should also reconsider Plaintiff's father's similar report.[6]

19

20

21

22  [6] The applicable regulations do not require the ALJ to weigh the Plaintiff's father's report, or to address
    the consistency or supportability of that report, but they do require that the ALJ must consider this
    evidence.  *See* 20 C.F.R. §§ 416.920, 416.920c.  Although Plaintiff contends that the Ninth Circuit has
23  continued to require an ALJ to provide germane reasons to discount lay evidence even under the new
    regulations (Dkt. 24 at 9), the case Plaintiff cites does not apply the new regulations that apply to this
    case.  *See Muntz v. Kijakazi*, 2022 WL 17484332, at *2 n.1 (9th Cir. Dec. 7, 2022).

ORDER REVERSING THE COMMISSIONER'S
DECISION - 7

1

### C.     The ALJ Erred in Assessing Medical Opinion Evidence

2        Plaintiff's treating therapist, Daniella Fernandez, LMHCA, LMFT, SUDP, MHP, wrote a

3   one-page letter describing Plaintiff's diagnoses, symptoms, and limitations.  AR 775.  Ms.

4   Fernandez concluded that Plaintiff

5              would face challenges in almost any type of employment situation that required
               regular attendance, completion of specific tasks in a specified timeframe, and
6              engagement with coworkers.  [Plaintiff's] mental health challenges interrupt his
               sleep patterns, limit his ability to feel safe in certain social situations, and limit his
7              ability to follow strict daily structure.

8   *Id*.

9        Under regulations applicable to this case, the ALJ is required to articulate the

10   persuasiveness of each medical opinion, specifically with respect to whether the opinions are

11   supported and consistent with the record.  20 C.F.R. § 416.920c(a)-(c).  An ALJ's consistency

12   and supportability findings must be supported by substantial evidence.  *See Woods v. Kijakazi*,

13   32 F.4th 785, 792 (9th Cir. 2022).

14        In this case, the ALJ found Ms. Fernandez's opinion unpersuasive to the extent she

15   suggested that Plaintiff has marked limitations as to absenteeism, maintaining a work schedule,

16   and dealing with coworkers because these limitations were unsupported by Ms. Fernandez's

17   treatment notes, which demonstrate that Plaintiff was engaged with treatment and generally had

18   normal mental status findings, and inconsistent with other evidence in the record, showing that

19   Plaintiff's symptoms improved with treatment and that he had many normal mental status

20   findings.  AR 27.[7]

21        Neither the supportability nor the consistency finding is supported by substantial

22   evidence, for reasons explained *supra*.  The mental status findings of Ms. Fernandez or other

23

---

[7] The ALJ also found that other parts of Ms. Fernandez's opinion failed to identify specific functional
limitations, which is a reasonable reading of the opinion.  *See* AR 775.

ORDER REVERSING THE COMMISSIONER'S
DECISION - 8

providers do not pertain to the primary symptoms that Plaintiff alleged, namely the intrusive thoughts that led him to isolate and harm himself.  Plaintiff indeed engaged in treatment, and experienced some degree of improvement at times, but the therapeutic relationship he formed during appointments with Ms. Fernandez is unlike a workplace context, despite the ALJ's reasoning to the contrary.  *See* AR 27 ("While the claimant may have shown little progress in outside assignments, as [Ms. Fernandez] indicated, he was able to take direction and follow through in session and use simple judgment in that supervised context, suggesting that he could perform similarly in a work environment.").

On remand, the ALJ shall reconsider Ms. Fernandez's opinion in light of the treatment notes as a whole, without isolating the mental status findings to the exclusion of other relevant parts of the record.

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should reconsider Plaintiff's allegations, Plaintiff's father's report, and Ms. Fernandez's opinion, and reconsider any other part of the decision as necessary in light of the updated record.

Dated this 4th day of May, 2023.

S. KATE VAUGHAN
United States Magistrate Judge

ORDER REVERSING THE COMMISSIONER'S
DECISION - 9